```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Lori Carrier and Valerie Whitman

    v.                                    Civil No. 05-cv-430-JD
                                      Opinion No. 2006 DNH 048
American Bankers Life Assurance
Company of Florida


O R D E R

Lori Carrier and Valerie Whitman filed a putative class action in state court, alleging that American Bankers Life Assurance Company of Florida breached its insurance contracts with them and other members of the putative class by failing to refund the unearned portion of insurance premiums that had been prepaid for credit insurance as part of their vehicle financing. American Bankers removed the case to this court and moves to dismiss the complaint. The plaintiffs oppose the motion to dismiss except that they agree that their separate claim for breach of the implied covenant of good faith and fair dealing should be included in their breach of contract claim so that Count II should be dismissed. After filing the motion to dismiss, American Bankers filed a motion to certify a question to the New Hampshire Supreme Court, which will also be addressed in this order.

## Standard of Review

In considering a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Edes v. Verizon Comms., 417 F.3d 133, 137 (1st Cir. 2005). The court must determine whether the complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim." Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002). "The standard for granting a motion to dismiss is an exacting one: 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47, 50 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)).

American Bankers filed copies of its insurance policies with its motion to dismiss, explaining that the policies are integral to the plaintiffs' claims. Ordinarily, the court cannot consider documents outside the complaint when deciding a motion to dismiss. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993). Nevertheless, "it is well-established that in reviewing the complaint, [the court] 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in

the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  In this case, the insurance policies are sufficiently integral to the complaint that they may be considered for purposes of the motion to dismiss.

## Background

The plaintiffs allege that American Bankers sells credit life and disability insurance which pays a loan if the insured debtor dies or is disabled and unable to make payments before the loan is paid in full.  When the plaintiffs purchased vehicles on credit, the dealerships arranged financing that included the American Bankers's credit insurance.  The plaintiffs paid a single premium up front for the insurance as part of the financing arrangement.

The plaintiffs then both paid their loans in full early, before the end of the full financing period.  As a result, their insurance coverage also terminated early, leaving part of the premium paid to American Bankers, the part that paid for coverage that would have been provided for the full term, unearned.  Under the applicable policy provision, "[a]ny unearned premium will be: (1) credited to the insured's account, if financed, or paid to

the insured; and (2) computed by the formula on file and approved by the Insurance Commissioner."  American Bankers did not refund the unearned part of the premium to the plaintiffs.

## Discussion

The plaintiffs allege in Count I that American Bankers breached its contract of insurance with them by failing to refund the unearned part of the premium they each paid.  In Count IV, the plaintiffs seek a declaratory judgment that American Bankers is obligated to refund the unearned premium to them and an injunction to require American Bankers to implement and maintain a system to assure prompt refunds.  The complaint does not include Count III, and the plaintiffs have agreed to dismiss Count II.  American Bankers moves to dismiss all of the claims.  In conjunction with its motion to dismiss, American Bankers seeks to have a question of statutory interpretation certified to the New Hampshire Supreme Court.  That issue will be addressed first.

I.  Certification

The New Hampshire Supreme Court provides for certification by this court of "questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."  N.H.

Supr. Ct. R. 34.  "Absent controlling state-law precedent, a federal court sitting in diversity has the discretion to certify a state-law question to the state's highest court."  <u>Nieves v. Univ. of P.R.</u>, 7 F.3d 270, 274 (1st Cir. 1993).  Certification is inappropriate, however, if "the course the state courts would take is reasonably clear."  <u>Fischer v. Bar Harbor Banking & Tr. Co.</u>, 857 F.2d 4, 8 (1st Cir. 1988).  Therefore, the court must first "undertake [its] own prediction of state law" to determine whether the state law is reasonably clear.  <u>Nieves</u>, 7 F.3d at 275.

American Bankers moves to certify the following question to the New Hampshire Supreme Court:

> When a retail installment contract that finances a motor vehicle purchase is paid in full prior to its maturity, is the insurer that issued credit insurance on the loan (the premium for which was financed as part of such retail installment contract) required under RSA 361-A:7, IV-a to remit a refund of the unearned premium before it receives written notice of the prepayment from the holder of the loan?

Carrier and Whitman object to the motion to certify on the grounds that the course the New Hampshire Supreme Court would take is reasonably clear, particularly in light of decisions on the same issue by New Hampshire trial courts.  Carrier and Whitman also object to American Bankers's decision to proceed in federal court and then raise an issue of state law.

As is more fully explained below, RSA 361-A:7, IV-a on its face imposes no obligation on the insurer of an installment

contract loan, making the proposed question meaningless.  In addition, the plaintiffs' claim is breach of contract not a claim that American Bankers failed to honor a statutory obligation under RSA 361-A:7, IV-a.  Even if RSA 361-A:7, IV-a were construed, contrary to its plain meaning, to condition the insurer's statutory refund obligation on notice from the holder of the loan, that provision would merely provide a baseline of statutory protection that would not prevent American Bankers from providing greater protection or additional promises to its insureds under the terms of its policy as long as the policy otherwise complies with statutory requirements.  See, e.g., Wegner v. Prudential Prop. & Cas. Ins. Co., 148 N.H. 107, 109 (2002).

     Therefore, the question American Bankers poses is not appropriate for certification because it is not determinative of the issue raised in this case.  See, e.g., Stenberg v. Carhart, 530 U.S. 914, 944-45 (2000).  Further, even if the question did present a determinative issue, the decisions in Gibson v. Universal Underwriters Life Ins. Co., No. 04-C-414 (N.H. Superior Ct. October 29, 2004) and Amoche v. Guarantee Tr. Life Ins. Co., No. 04-C-674 (N.H. Superior Ct. Mar. 24, 2005), that were provided by the plaintiffs, persuade this court that the course the New Hampshire Supreme Court would take in construing RSA 361-A:7, IV-a, in this context, is reasonably clear.

In addition, the plaintiffs filed this state law action in state court. American Bankers removed the action to federal court and then raised an issue of state law and state statutory construction. Having chosen the federal forum, absent unusual circumstances, American Bankers must accept the federal court's reasonable interpretation of state law "rather than seeking extensions via the certification process." Manchester Sch. Dist. v. Crisman, 306 F.3d 1, 14 (1st Cir. 2002).

II.  Motion to Dismiss

American Bankers moves to dismiss the breach of contract claim on the ground that the plaintiffs failed to allege that American Bankers received written notice of the early termination of their loans. American Bankers contends such notice is a condition precedent to its obligation to refund unearned premiums. It moves to dismiss the claim for declaratory and injunctive relief on the grounds that the plaintiffs have an adequate remedy at law and have not alleged irreparable harm. American Bankers also contends that the declaratory judgment claim is merely duplicative of the breach of contract claim.

A.  Breach of Contract

Although the policies do not include a notice requirement pertaining to the refund obligation, American Bankers asserts

that the New Hampshire statute requiring a retail installment contract holder to provide written notice to the insurer when the contract is paid in full before maturity is an implied condition that must be satisfied before it is obligated to refund unearned premiums. See RSA 361-A:7, IV-a. By asserting that its policy includes an implied condition precedent based on that statute, American Bankers raises issues as to the meaning of the policy language and the statutory framework.

### 1. Interpretation of the policy.

"The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for the court to decide." D'Amour v. Amica Mut. Ins. Co., 891 A.2d 534, 536 (N.H. 2005) (internal quotation marks omitted). The court "construe[s] the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." Id. In interpreting policy language, the court is bound by its reasonable meaning and is not free to rewrite policy provisions. Catholic Med. Ctr. v. Exec. Risk Indem., Inc., 151 N.H. 699, 702 (2005).

Ordinarily, when policy provisions are ambiguous, the ambiguity is resolved in favor of the insured. Kelly v. Prudential Prop. & Cas. Ins. Co., 147 N.H. 642, 643 (2002) (citing Trombly v. Blue Cross/Blue Shield, 120 N.H. 764, 770

(1980)). "Where the insurer does not choose the language because that language is prescribed by statute, this rule does not apply." Matarese v. N.H. Mun. Ass'n, 147 N.H. 396, 401 (2002). In that case, the court examines the intent of the legislature to determine the meaning of the statutory language used in the policy. Id.

American Bankers asserts that RSA 408-A:8, II prescribed the language used in the refund provision so that the legislature's intent, which American Bankers asserts is expressed in RSA 361-A:7, IV-a, controls the meaning of that provision. The refund provision in the American Bankers's policy states:

> Refunds: Any unearned premium will be:
>     1. credited to the insured's account, financed, or paid to the insured; and
>     2. computed by the formula on file and approved by the Insurance Commissioner.

RSA 408-A:8, II provides:

> Each individual policy, group certificate or notice of proposed insurance shall provide that in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the debtor for insurance shall be paid or credited promptly to the person entitled thereto within 30 days from the termination of the insurance; provided, however, that the commissioner shall prescribe a minimum refund and no refund which would be less that such minimum need be made.

Although RSA 408-A:8, II clearly requires credit insurance policies to include a provision for a refund, the American Bankers's refund provision did not borrow any language from the statute. Further, the statute does not include a notice

provision or reference RSA 361-A:7, IV-a, providing no basis to assume that RSA 361-A:7, IV-a expresses legislative intent that is pertinent to RSA 408-A:8, II.[1]  Therefore, the policy language is construed under the ordinary rules of construction.

Under the policy, the term of insurance ends when the debt is repaid and "[a]ny unearned premium will be . . . credited to the insured's account, if financed, or paid to the insured." Although the policy imposes no notice requirement or condition for a refund, American Bankers argues that the notice required by RSA 361-A:7, IV-a is an implied condition precedent to its refund obligation.  That theory is based on American Bankers's assertion that its policies were amended to conform to New Hampshire law, including the requirement of a refund of unearned premiums, and that state law applies to insurance contracts.

Under New Hampshire law, however, "conditions precedent are not favored, and [the court] will not so construe such conditions unless required by the plain language of the agreement." Holden Eng'g & Surveying, Inc. v. Pembroke Rd. Realty Tr., 137 N.H. 393, 396 (1993).  In the absence of an express notice requirement in the refund provision, no such condition may be inferred.[2]

---

[1] Chapter 408-A is titled "Credit Life and Accident Health Insurance," while Chapter 361-A pertains to retail installment sales of motor vehicles.  Neither chapter cross-references the other.

[2] In contrast, the policy expressly conditions its promise to pay insurance benefits on receipt of proof of death or

Therefore, on its face, the policy does not condition payment of the refund on notice to the insured.[3]

American Bankers also argues that the statutory provisions pertinent to installment sales and credit insurance are necessarily incorporated into its policies, despite the lack of any specific reference to those statutes. Cf. Forbes Farm P'ship v. Farm Family Mut. Ins. Co., 146 N.H. 200, 202-03 (2001) (discussing policy with specific statutory reference). The court will consider the effect of the statutory framework without deciding whether the policy incorporated those statutes.

---

disability: "We will pay the benefit to the beneficiary: 1. when we receive proof of an insured's death . . . ." and "We will pay the monthly benefit to the beneficiary: 1. when we receive proof [of specified disability]."

[3]American Bankers cites cases from other courts that it represents "involved the same allegations and plaintiff's counsel as in this case" and "substantially similar allegations as this case" and ruled against those claims. Reply at 5. Contrary to that representation, however, the holdings in the cited cases did not involve breach of contract claims. Instead, the plaintiffs in those cases brought claims under the Racketeer Influenced and Corrupt Organizations Act, which were dismissed due to a failure to allege or present evidence of fraud. See Richards v. Combined Ins. Co. of Am, 55 F.3d 247, 249 (7th Cir. 1995); Hoban v. USLife Credit Life Ins. Co., 163 F.R.D. 509, 515-16 (N.D. Ill. 1995); Sousa v. N. Cent. Life Ins. Co., 910 F. Supp. 53, 57 (D.R.I. 1995). Because the plaintiffs do not allege RICO claims here, the discussions of the refund provisions in the context of RICO fraud in those cases are inapposite here.

### 2. Statutory construction.

"In construing a statute, the court "examine[s] the language of the statute, and, where possible, [] ascribe[s] the plain and ordinary meanings to the words used." Foote v. Manchester Sch. Dist., 152 N.H. 599, 601 (2005). The court "interpret[s] statutes in the context of the overall statutory scheme and not in isolation." Id. When the language of a statute is clear, it is not subject to modification, and the court "will neither consider what the legislature might have said nor add words that it did not see fit to include." Verizon New Eng., Inc. v. City of Rochester, 151 N.H. 263, 266 (2004); accord Banfield v. Allstate Ins. Co., 152 N.H. 491, 496 (2005).

RSA 361-A:7, IV-a provides that "[i]f a retail installment contract is paid in full prior to maturity, then no later than 30 days after payment in full, the holder of the contract shall provide written notice of such payment to any insurance company that has issued an insurance contract the premium of which was financed as part of such retail installment contract." As such, the statute requires the "holder of the contract" to provide notice to the insurer. "The 'holder' of a retail installment contract means the retail seller of the motor vehicle under or subject to the contract or . . . the sales finance company or other assignee." RSA 361-A:1, VI.

The statute plainly requires the seller to provide notice of

an early payoff to the insurer with specified information, including a statement "that pursuant to RSA 361-A a refund by the insurer of any unused prepaid premium is due the buyer upon receipt of the notice."  American Bankers interprets that statement to provide a statutorily imposed condition precedent for its obligation to refund unearned premiums to insured buyers.  The statute requires notice by the seller to the insurer of its obligation to refund unearned premiums to the buyer, which obligation arises, at the latest, when the insurer receives notice of payment in full from the seller.  The statutory notice requirement is an obligation owed by the <u>seller</u> to the <u>insurer</u> and does not impose any obligations on the insured buyer or restrict or limit any obligations owed by the insurer to the insured buyer.

New Hampshire law requires all credit insurance policies, such as the American Bankers policy at issue here, to "provide that in the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the insured debtor for insurance shall be paid or credited promptly to the person entitled thereto within 30 days from the termination of the insurance."  RSA 408-A:8, II.  The statute does not require notice by the debtor as a condition of the statutorily required payment.  In addition, under New Hampshire law, all credit insurance policies, such as the

American Bankers policy at issue here, are required to provide, among other things, "a description of the amount, term and coverage including any exceptions, limitations or restrictions . . . ."  RSA 408-A:6, II.  Therefore, to the extent American Bankers intended to include a notice requirement as a condition of its promise to refund unearned premiums, it was arguably required to provide a description of that requirement in the policy, which it failed to do.

Given the statutory framework, RSA 361-A:7, IV does not condition the insurer's obligation to pay a refund to its insured on receipt of notice from the seller.  American Bankers's policy language pertaining to the refund cannot reasonably be interpreted to require notice, either from the insured or the seller, as a condition precedent to the insurer's obligation to refund unearned premiums to its insured.  Although a notice requirement in the policy might have been advisable, American Bankers chose not to include such a provision, and the court is not free either to construe the language in the insurer's favor or to rewrite the policy to include a notice condition.

III.  Declaratory and Injunctive Relief

In the complaint, the plaintiffs allege that they seek "a declaration that if a credit-insured loan is paid off prior to the scheduled expiration date of the single premium credit

14

insurance coverage, then American Bankers is obligated to refunds [sic] the unearned premium to the insured." Comp. ¶ 65. They also seek "an injunction requiring American Bankers to implement and maintain controls designed to reasonably assure the prompt refund of unearned premiums on early loan payoffs as required by American Bankers' contracts." Id. ¶ 66. American Bankers moves to dismiss those claims asserting that the plaintiffs have an adequate remedy at law, that they failed to allege the necessary elements for an injunction, and that the declaratory judgment claim duplicates the breach of contract claim.

Because the plaintiffs filed their action in state court, their request for a declaratory judgment is brought pursuant to RSA 491:22.[4] Under RSA 491:22, "[a]ny person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive. The existence of an adequate remedy at law or in equity shall not preclude any person from obtaining such declaratory relief." Therefore, an adequate legal remedy does not require dismissal of the declaratory judgment claim. Further, a declaratory judgment provides a different remedy than breach of contract and is therefore not duplicative

---

[4] The plaintiffs do not state the legal basis for their declaratory judgment claim in the complaint.

15

of a breach of contract claim.

The plaintiffs alleged a claim for injunctive relief under New Hampshire law that provides "[a]n injunction will issue if there is an immediate danger of irreparable harm to the party seeking injunctive relief, and there is no adequate remedy at law."[5]  UniFirst Corp. v. City of Nashua, 130 N.H. 11, 14 (1987) (internal quotation marks omitted).  Further, "[i]njunctive relief is one of the peculiar and extraordinary powers of equity, . . . normally to be exercised only when warranted by imminent danger of great and irreparable damage."  N.H. Donuts, Inc. v. Skipitaris, 129 N.H. 774, 779 (1987) (internal quotation marks and citations omitted).  A claim for monetary damages obviates the need for an injunction.  See Murphy v. McQuade Realty, Inc., 122 N.H. 314, 532 (1982).

American Bankers is correct that the plaintiffs have not

---

[5]The parties address the injunction claim under New Hampshire law, which raises a potential choice of law question under Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  See, e.g., Charlesbank Equity Fund II v. Blinds to Go, Inc., 370 F.3d 151, 158 (1st Cir. 2004) (noting but not deciding Erie issue); Mid-America Pipeline Co. v. Lario Enter., Inc., 942 F.2d 1519 1523 (10th Cir. 1991) ("We apply the law of the forum state in determining whether to grant mandatory injunctive relief in diversity cases.").  It is not necessary to determine whether state or federal law provides the governing law for injunctive relief in this case as the federal standard is not materially different from the state standard for purposes of the present motion.  See, e.g., Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co., Inc., 378 F.3d 29, 33 (1st Cir. 2004); Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 222 (1st Cir. 2003); Donoghue v. IBC USA Inc., 70 F.3d 206, 219 (1st Cir. 1995).

alleged any facts to support their injunction claim.  Further, their claim for damages suggests that an injunction is not necessary.  Therefore, the claim for injunctive relief is dismissed.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 4) is granted as to the claim for injunctive relief and is otherwise denied.  The defendant's motion to certify a question (document no. 16) is denied.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

April 21, 2006

cc:   Dustin T. Brown, Esquire
      Frank Burt, Esquire
      Jason Lance Crawford, Esquire
      J. Clay Fuller, Esquire
      Wilbur A. Glahn, III, Esquire
      Ferrokh Jhabvala, Esquire
      Edward K. O'Brien, Esquire