UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Lori Carrier and
Valerie Whitman


        v.                          Civil No. 05-cv-430-JD
                                    Opinion No. 2008 DNH 031

American Bankers Life
Assurance Co. of Florida


                        O R D E R

        Lori Carrier and Valerie Whitman filed a putative class
action, alleging that American Bankers Life Assurance Company of
Florida breached the terms of its credit insurance policies with
them and other putative class members when it failed to refund
the unearned portion of premiums that had been prepaid as part of
their vehicle financing.  Carrier and Whitman move for class
certification.   American Bankers opposes the motion.


                    Standard of Review

        The circuits differ on the standard of proof necessary to
support a motion for class certification.  See In re Initial Pub.
Offering Sec. Litig., 471 F.3d 24, 38-40 (2d Cir. 2006)
(discussing law in the circuits).  The First Circuit follows the
majority view, holding that "a district court must conduct a
rigorous analysis of the prerequisites established by Rule 23

before certifying a class."[1]  In re PolyMedica Corp. Sec. Litig.,
432 F.3d 1, 6 (1st Cir. 2005) (internal quotation marks omitted).
In doing so, a district court may resolve disputed factual issues
that arise in the course of class certification by considering
materials beyond the pleadings.  Id.

Background

Carrier and Whitman each purchased a car at a dealership in
New Hampshire on credit.  As part of their car financing
arrangements, Carrier and Whitman also purchased credit
disability insurance issued by American Bankers through the car
dealerships.  They paid a single premium that was included in
their vehicle financing when they bought their cars.  Both paid
off the loans before the due dates.

The American Bankers insurance policies issued to Carrier
and Whitman provide that "[a]ny unearned premium will be:  (1)
credited to the insured's account, if financed, or paid to the
insured; and (2) computed by the formula on file and approved by
the Insurance Commissioner."  Neither Carrier nor Whitman
received a refund or credit for the part of the premium that

---

[1]Although the issue arises most frequently in securities
fraud litigation, neither the First Circuit nor other circuits
have limited the analysis to that context.

would have covered the remainder of the financing period after they prepaid their loans.

Carrier and Whitman brought suit, as a putative class action, against American Bankers, alleging that American Bankers breached the term of its insurance policies that promised to refund the unearned part of the premium each of them paid and breached the implied covenant of good faith and fair dealing. They also seek a declaratory judgment that American Bankers is obligated to refund unearned premiums to its insureds.

In their motion for class certification, Carrier and Whitman, as class representatives, propose the following class: "All persons charged for American Bankers single premium credit life and/or disability insurance; 1) produced by a motor vehicle dealership located within IA, ID, KS, ME, MI, MT, ND, NH, NJ, OH, OR, RI, or TX; 2) who paid off their credit-insured loans prior to the coverage expiration date and within the applicable limitations period; but 3) did not receive a refund of their unearned premium."  They also propose, but not as part of the class definition, that those who bought insurance but

> (1) who timely and properly request exclusion from the
> class; (3) [sic] who are present or former officers and
> directors of American Bankers; (4) whose credit
> insurance was rescinded by mutual consent of the
> parties or whose coverage was canceled by either the
> insured or the insurer prior to the prepayment date;
> (5) whose indebtedness was discharged in bankruptcy and

3

not reaffirmed; (6) whose coverage was terminated
because the collateral was repossessed; (7) who have
signed contracts with American Bankers that contain a
provision requiring arbitration of claims for unearned
premium; and (8) as to whom American Bankers has paid a
claim

be excluded from the class.


## Discussion

Carrier and Whitman seek to represent a class of people who

paid a single premium for credit insurance from American Bankers

when they purchased vehicles and then did not receive a refund of

the unearned part of the premium when they prepaid their loans.

They contend that the proposed class satisfies the requirements

of Federal Rule of Civil Procedure 23(a) and 23(b)(3).  American

Bankers opposes class certification, arguing that the plaintiffs'

proposed class definition is defective and that the plaintiffs

cannot satisfy the requirements of Rule 23(a) or Rule 23(b)(3).

"To obtain class certification, the plaintiff must establish

the four elements of Rule 23(a) and one of [the] several elements

of Rule 23(b)."  Smilow v. Southwestern Bell Mobile Sys., Inc.,

323 F.3d 32, 38 (1st Cir. 2003).  For purposes of class

certification, the court does not decide whether the plaintiffs

will prevail on the merits of their claims but may consider the

probable course of the case to "'formulate some prediction as to

how specific issues will play out in order to determine whether
common or individual issues predominate.'"  In re PolyMedica, 432
F.3d at 6 (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208
F.3d 288, 298 (1st Cir. 2000)).

I.  Oral Argument

     Carrier and Whitman move for oral argument on the motion for
class certification.  The rule in this district is that
ordinarily the court will decide motions without oral argument.
LR 7.1(d).  The court may allow argument if a party shows, in a
written statement, that it would provide assistance to the court
in deciding the motion.  Id.

     In support of their motion, Carrier and Whitman contend that
oral argument would assist the court in deciding class
certification because they "would be available to respond to any
concerns the Court may have pertaining to the mechanics and
procedures for obtaining payoff dates to verify class membership
and quantify damages."  Mot. at 1.  Counsel for American Bankers
did not concur in the motion or file a response.

     The court does not believe that oral argument on the issue
proposed by the plaintiffs would be of assistance in deciding the
motion for class certification.

II.  <u>Goulette Declaration</u>

In a footnote, American Bankers challenges the declaration of Aaron Goulette and the appendix to the declaration that Carrier and Whitman filed in support of their motion for class certification.  American Bankers contends that the declaration is double hearsay and that the appendix lacks authentication.  In addition, American Bankers disputes some of the information provided in the declaration and appendix.  Carrier and Whitman argue that the rules of evidence do not apply at the class certification stage because they need only provide some facts to support certification and need not prove a prima facie case.

The First Circuit has not addressed the question raised here as to whether extrinsic materials that may be considered by the court in deciding whether to certify a class must be admissible under the rules of evidence.  The Fifth Circuit requires that the loss causation issue in fraud on the market securities cases be established by admissible evidence at the class certification stage.  <u>Unger v. Amedisys Inc.</u>, 401 F.3d 316, 319 (5th Cir. 2005).  Outside of securities litigation, other courts have not required admissible evidence for purposes of class certification.  <u>See, e.g.</u>, <u>Bell v. Addus Healthcare, Inc.</u>, 2007 WL 3012507 at *2 (W.D. Wash. Oct. 12, 2007); <u>Tedrow v. Cowles</u>, 2007 WL 2688276 at *2 (S.D. Ohio Sept. 12, 2007) (citing cases).

Aaron Goulette states that he is Senior Project Manager for the New Hampshire Unearned Premiums Litigation Center, which was established by plaintiffs' counsel in coordination with the New Hampshire law firm of Douglas, Leonard & Garvey, PC, in Concord, New Hampshire.  He explains that the Center administers settlements in cases involving claims of unearned premiums and collects and distributes unearned premiums obtained through class actions, which have been filed against motor vehicle finance companies in New Hampshire state court.  He further explains that in the course of discovery in cases against creditors who provided automobile financing, he has found documents pertaining to credit insurance issued by American Bankers.

In particular, Goulette found that 101 members of a class in the creditor cases purchased credit insurance from American Bankers, that their car loans were paid before the due dates, and that no refunds were paid to them.  He adds that these results do not show all of American Bankers's New Hampshire insureds who prepaid their loans and did not get a refund, but only those who financed their cars through creditors who are defendants in other class actions.

American Bankers assails Goulette's information based on the affidavit of its Vice President for Credit Operations, Marilyn Wycoff.  Wycoff states that she has checked American Bankers's

7

records for the 101 insureds identified by the plaintiffs and
found no record for seven of them, found that at least forty-six
were sent refunds, found that six did not purchase disability
insurance (which is the kind of insurance purchased by both
Whitman and Carrier), and found that four did not prepay their
loans.  Because of those asserted inaccuracies, American Bankers
contends that Goulette's information is neither admissible nor
reliable.

Since the rules of evidence do not strictly apply for
purposes of determining class certification, the court will
consider both Goulette's declaration and Wycoff's affidavit in
assessing the information provided by Goulette.

III.  Class Definition

Federal Rule of Civil Procedure 23(c)(1)(B) requires that an
order certifying a class include a definition of the class and
the class claims, issues, or defenses.  American Bankers contends
that the Rule 23(c)(1)(B) requirement cannot be met in this case
because the class is defined to include those who purchased
disability credit insurance, like the named plaintiffs, along
with those who purchased life credit insurance, which the named
plaintiffs did not purchase.  American Bankers contends that the
named plaintiffs lack standing to represent those who purchased

only life credit insurance.  American Bankers also asserts that
the proposed class definition would require a finding of
liability to identify class members and that it is too indefinite
to permit identification of the class.  The plaintiffs oppose
these arguments.

   A.  <u>Standing</u>

   In a class action, the named class representatives must
allege and show that they suffered an injury and cannot base
their claim on the injuries suffered by other unidentified
members of the proposed class.  <u>Lewis v. Casey</u>, 518 U.S. 343, 357
(1996).  "To have standing to sue as a class representative it is
essential that a plaintiff must be a part of that class, that is,
he must possess the same interest and suffer the same injury
shared by all members of the class he represents."  <u>Schlesinger
v. Reservists Comm. to Stop the War</u>, 418 U.S. 208, 216 (1974).
The plaintiffs bear the burden of showing that they have standing
to maintain the action.  <u>Lewis</u>, 518 U.S. at 358.

   Carrier and Whitman assert that they have standing to
represent all of the members of the described class who did not
receive a refund of the unearned portion of the credit insurance
premium each paid to American Bankers after each class member
prepaid the car loan.  They contend that American Bankers offered

9

both disability and life credit insurance on the same form.  They also contend that the termination and refund provisions and procedures for disability and life credit insurance are the same. Therefore, Carrier and Whitman argue, their injuries are the same as those who bought life credit insurance and did not receive refunds of the unearned parts of their premiums.

Carrier and Whitman, along with the putative class members, purchased credit insurance and did not receive refunds when they prepaid their loans.  On the present record, no material difference is apparent between those who purchased life credit insurance and those who purchased disability credit insurance. Therefore, at this stage, Carrier and Whitman have demonstrated that they have standing to represent the putative class, including those who purchased life credit insurance.

### B.  Class Definition

American Bankers asserts that the class definition does not allow identification of class members based on objective criteria but instead requires individualized determinations as to each member.  As a result, American Bankers argues, identification of the class will require "a prolonged and individualized analytical struggle."  Carrier and Whitman disagree, contending that the

proposed class definition provides clear objective criteria for membership.

"'The proposed class must be precisely defined and its members must be ascertainable through the application of stable and objective factors so that a court can decide, among other things, who will receive notice, who will share in any recovery, and who will be bound by the judgment.'" In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005) (quoting Van West v. Midland Nat'l Life Ins. Co., 199 F.R.D. 448, 451 (D.R.I. 2001)).  The class definition must be based on objective criteria so that class members may be identified without individualized fact finding. Crosby v. Social Sec. Admin., 796 F.2d 576, 579-80 (1st Cir. 1986).  A class definition that is based on non-specific matters, such as "wrongful conduct," or subjective factors, such as "a reasonable time," is not objectively ascertainable. Id. at 580.  In addition, a class definition cannot be based on the merits of the claim, which would require a finding on liability to identify class members. See Eversole v. EMC Mortgage Corp., 2007 WL 1558512 at *5 (E.D. Ky. May 29, 2007); Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642, 647 (W.D. Wash. 2007); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 341 (S.D.N.Y. 2004).

Carrier and Whitman define the class to include those who
purchased American Bankers's single premium credit insurance in
specified states, prepaid their loans during the limitations
period, and did not receive their premium refunds.  Although they
also propose to exclude certain potential class members based on
a list of eight factors, they do not define the class with the
exclusion factors.  To be sufficiently specific, the class must
be defined by both the stated definition and the eight exclusion
factors, which it does not do at present.

American Bankers challenges that part of the proposed
definition which identifies members as those "who paid off their
credit-insured loans prior to the coverage expiration date . .
.," on the ground that applying the definition would require a
determination of liability.  American Bankers reasons that under
the plaintiffs' breach of contract theory, American Bankers
promised to refund unearned premiums so that it is liable if it
failed to refund after prepayment.  "Thus, identifying class
members under the proposed class definition is unquestionably
dependent on a determination of liability . . . ."  Obj. at 13.

The court disagrees.  The challenged part of the definition
requires that a class member have prepaid his or her loan.  That
requirement does not depend on proof that American Bankers
breached the terms of the insurance policy.  In contrast, if the

12

class were defined as insureds whose policies American Bankers
had breached by failing to refund unearned premiums, such a
definition would depend on the merits of the claim, that is, a
determination of whether American Bankers had breached the
policies.  See, e.g., Eversole, 2007 WL 1558512 at *5 (listing
cases where definition required a liability determination).

American Bankers also argues that the proposed class
definition requires too many individualized, fact-based findings.
In particular, American Bankers contends that findings will be
necessary as to whether each potential class member was charged a
premium, prepaid the loan, received a refund, had the loan
collateral repossessed, received a discharge in bankruptcy, was
bound by a mandatory arbitration clause, and had a claim paid
under the policy.  American Bankers asserts that the date each
potential class member paid the loan will require thousands of
individualized determinations.

In cases where courts have found that the class definition
was defective because it required individualized findings, the
definition included indefinite terms that would necessarily be
different as applied to each potential member.  For example, a
class defined as those who paid undisclosed compensation through
inflated brokerage commissions required individualized
determinations of the subjective intent of each of the

13

purchasers.  <u>In re I.P.O. Sec. Litig.</u>, 471 F.3d at 44–45.
Nicotine addiction was held to require a "highly individualistic
inquiry," which precluded class certification.  <u>Barnes v. Am.
Tobacco Co.</u>, 161 F.3d 127, 144 (3d Cir. 1998).  In <u>Crosby</u>, the
class was defined as those who did not receive a social security
claim hearing within a <u>reasonable</u> amount of time, which the court
found required individual determinations of what would be
reasonable in each circumstance.  796 F.2d at 580.

    The issues American Bankers raises do not require individual
determinations of the kind that courts have found would interfere
with identifying class members.  The cited parts of the proposed
class definition are readily ascertainable factors that would not
require considering indefinite criteria such as the insured's
subjective state of mind or the surrounding circumstances of each
loan.[2]  The proposed class definition, if it included the listed
exclusions, would not be indefinite or otherwise defective.  As
proposed, however, the definition is incomplete.

---

    [2]Carrier and Whitman assert that the proposed class
definition is comprised of only three factors:  those who bought
credit insurance produced by a motor vehicle dealership in the
listed states, paid off the loan before their insurance coverage
expired, and did not receive a refund.

IV.  <u>Prerequisites of Rule 23(a)</u>

     "All class actions certified under Rule 23 must meet certain
prerequisites listed in subsection (a):  there must be numerosity
of class members, common questions of law or fact, the
representative must be typical of the class, and his or her
representation of the class must be adequate."  <u>Tardiff v. Knox
County</u>, 365 F.3d 1, 4 (1st Cir. 2004); <u>accord</u> <u>Berenson v. Nat'l
Fin. Servs. LLC</u>, 485 F.3d 35, 38 (1st Cir. 2007).  A class may be
certified only "if the trial court is satisfied, after a rigorous
analysis, that the prerequisites of Rule 23(a) have been
satisfied."  <u>Gen. Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147,
161 (1982).

A.  <u>Numerosity</u>

     To satisfy the numerosity requirement, the class
representatives must show that joinder of the potential class
members would be impracticable.  Fed. R. Civ. P. 23(a).  Whether
joinder is impracticable depends on the particular facts and
circumstances of the case, not merely on the number of potential
class members.  <u>Andrews v. Bechtel Power Corp.</u>, 780 F.2d 124, 131
(1st Cir. 1985).  As is noted above, the class representatives

15

must provide sufficient evidence of numerosity to satisfy a rigorous analysis.

Based on Aaron Goulette's declaration, Carrier and Whitman assert that New Hampshire has at least 101 potential class members.  Goulette calculated the number based on American Bankers's policies with major creditors who are defendants in other cases brought by the plaintiffs' counsel.  As is discussed above, American Bankers disputes that number on a variety of grounds.  Crediting American Bankers's challenges, but not subtracting those who bought credit life insurance, there would still be around forty-four potential class members in New Hampshire.

Carrier and Whitman also point to a chart they obtained from American Bankers in discovery that shows the number of people who had active disability credit insurance coverage from American Bankers within three years of the date this suit was commenced and who purchased vehicles from American Bankers's largest dealership agents.  The chart lists the purchasers by year of purchase and by state.  Carrier and Whitman represent that the total number of open policies shown in the chart is 16,000.[3]  No

---

[3]The chart only includes those who bought disability credit insurance, although the class is defined also to include those who bought life credit insurance or both types.  Therefore, the number of policyholders would be much larger if all of the

information is provided, however, as to how many of the 16,000
prepaid their loans but did not receive refunds.

American Bankers asserts, through the affidavit of Marilyn
Wycoff, that its relationship is with automobile dealers, not
with the lenders who finance the vehicles.  Because of that
arrangement, American Bankers asserts that it does not know when
its insureds prepay their loans and, therefore, does not know
when or if a refund is due unless the insured requests a refund.
As a result, American Bankers can only identify which insureds
have been paid refunds, not how many may be owed refunds.

Carrier and Whitman submitted copies of cases where courts
certified class actions for similar claims.  In <u>Reller v. Union
Security Life Ins.</u>, File No. C3-04-012202 (Minn. 2d Dist. Feb.
28, 2007) and <u>Lee v. Life Investors Ins. Co.</u>, File No. 03-15180
(Minn. 4th Distr. Apr. 27, 2005), the state courts applied
Minnesota law and concluded that the plaintiffs' estimates of
class members provided "some evidence" beyond mere speculation of
the number, which satisfied the numerosity requirement.  In <u>Toole
v. J.M.I.C. Life Ins. Co.</u>, Civil No. SU 2003 CV 246 (Ga. Super.
Ct. Aug. 11, 2005), the Georgia court, applying Georgia law,
found numerosity based on the plaintiff's exhibit and analysis

---

policyholders were included.

that showed more than 60,000 former J.M.I.C. policy holders who
appeared to be entitled to a refund.  In <u>Coley v. Guarantee Trust
Life Ins. Co.</u>, No. 99 L 6880 (Cook County, Ill., 3d Circuit, Oct.
2, 2000), the plaintiff individually identified 703 potential
class members, which satisfied the numerosity requirement.  In
<u>Murray v. GMAC Mtg. Corp</u>, 483 F. Supp. 2d 636, 642 (N.D. Ill.
2007), the court accepted the plaintiff's "admittedly coarse
calculation" for showing numerosity, and retained the right to
decertify the class if the number could not be ascertained.  On
reconsideration, the court vacated class certification.  <u>Id.</u> at
2007 WL 2317194 at *7 (N.D. Ill. July 23, 2007).

The evidence of numerosity in this case is less persuasive
and the standard is more demanding than that considered in the
cited cases.  Although there are apparently at least 16,000
people who purchased American Bankers disability credit insurance
within three years of the date this case commenced, Carrier and
Whitman provide no evidence of how many prepaid their loans and
did not receive refunds.  The only evidence of likely class
members is that approximately forty-four people in New Hampshire
prepaid their loans and did not receive refunds, but Goulette
stated in his declaration that even 101 was too small a number to
support a class action.

18

Although common sense might suggest that the likely number
of American Bankers's policyholders within the class definition
would be too numerous to practically join in the lawsuit, the
present record is not sufficient to permit a <u>finding</u> that the
defined class would meet the numerosity requirement.  Among the
unknowns are how many policyholders prepaid their loans and how
many would be excluded by the terms of the definition.  For
example, Carrier and Whitman provide no information about how
many American Bankers's policies include an arbitration
provision.

Better evidence of number appears to be available.  The
dealerships, which provided information used to compose the chart
of policyholders, presumably could provide information about the
lenders used by the American Bankers's policyholders.  The
lenders presumably have records of who repaid their loans before
the due dates.  Then, because American Bankers knows how many
refunds it has provided within the relevant time period, a
reasonably accurate estimate of potential class members could be
calculated from that information.  That number could be adjusted
based on the number of policies with arbitration clauses and
further adjusted based on the other exclusion factors.  Of
course, using the same information, American Bankers could
provide refunds, thereby reducing or even eliminating the class.

19

At present, Carrier and Whitman have not demonstrated that the
proposed class would be sufficiently numerous to meet the Rule
23(a)(1) requirement.

B.   Commonality

The class must share common questions of law or fact.  Fed.
R. Civ. P. 23(a)(2).  "All questions of fact and law need not be
common to satisfy the rule."  In re Neurontin Mkg. & Sale
Practices Litig., 244 F.R.D. 89, 105 (D. Mass. 2007).
Commonality can be satisfied by a single common legal or factual
issue, making it an easily satisfied prerequisite.  In re Sonus
Networks, Inc. Sec. Litig., 2007 WL 2826622 at *4 (D. Mass. Sept.
25, 2007).

Carrier and Whitman assert that the class shares the common
issue of American Bankers's form contract and American Bankers's
failure to refund their unearned premiums.  American Bankers
responds that complex and individualized issues will have to be
decided about each member's claim, such as the dates of
prepayment.  It also asserts that because the class members would
be residents of different states, different laws will control
their claims.  Even if individual issues exist, the proposed
class would nevertheless share the issue of the form contract and

the fact that American Bankers did not refund unearned premiums. Therefore, the requirement of Rule 23(a)(2) is met.

C.  Typicality

The class representatives' claims must be typical of the class's claims.  Fed. R. Civ. P. 23(a)(3).  Class members need not share identical claims.  In re Neurontin, 244 F.R.D. at 106. Instead, typicality is determined by considering the defendant's actions toward class members and the evidence necessary to prove the representative's claim when compared to class members' claims.  Id. at 106-07.

Carrier and Whitman contend that they, along with all class members, were subjected to the same conduct by American Bankers. That is, each of them bought credit insurance from American Bankers based on a form contract.  The insurance contracts provided that coverage would terminate if the loan were paid before the due date and that American Bankers would refund the unearned portion of the premium paid.  American Bankers has not refunded the unearned premiums.  American Bankers asserts that its insurance contracts have different refund provisions for each state, which will determine whether a breach occurred, making Carrier's and Whitman's claims not typical of the class.  It also

21

argues that material differences in state law will affect the
proposed class members' claims.

The form contracts from the states listed in the class
definition all promise refunds of unearned premiums but use
slightly different language in the refund provisions.
Specifically, the contracts provide different methods of
computing refunds with variations dependent on the state and the
type of credit insurance.  American Bankers's conduct toward the
class representatives, however, is the same.  Proof of the claim,
other than proof of damages, would also be similar, given the
same refund promise in each contract.  Therefore, the
representatives' claims are likely to be typical of the class.


D.  Adequacy of Representation

The class representatives must be able to fairly and
adequately protect the interests of the class.  Berenson v. Nat'l
Fin. Servs. LLC, 485 F.3d 35, 38 (1st Cir. 2007).  The
representatives must share the interests of the class as a whole.
Andrews, 780 F.2d at 130.  In addition, part of the adequacy
inquiry is to consider the "competency and conflicts of class
counsel."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20
(1997).  "An essential ingredient of this requirement is that the
class representative's attorneys be qualified to vigorously and

adequately prosecute the interests of the class."  Key v.
Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986).

Carrier and Whitman have demonstrated that their counsel is
experienced in consumer class action litigation, including cases
involving the same or similar claims as the claims brought here.
They submitted their declarations in which each explained the
factual basis of her claim, stated that counsel, Edward K.
O'Brien, informed her of the duties of a class representative,
stated that each is willing to serve, and declared that they have
no conflicts of interest that would interfere with
representation.

American Bankers, relying on the standard established in the
Fifth Circuit under the Private Securities Litigation Reform Act,
argues that to be adequate representatives, Carrier and Whitman
must show their willingness and ability to actively participate
in and control the case.  See Berger v. Compaq Computer Corp.,
257 F.3d 475, 480 (5th Cir. 2001); accord Feder v. Elec. Data
Sys. Corp., 429 F.3d 125, 130-31 (5th Cir. 2005).  American
Bankers contends that neither Carrier nor Whitman is able to take
an active role in or control the litigation in this case.
American Bankers points to their deposition testimony to show
that neither Carrier nor Whitman has sufficient understanding or
involvement in the case to serve as a class representative.

The First Circuit, however, has not adopted the Fifth
Circuit standard, even in the context of securities class action
litigation.  See In re Organogenesis Secs. Litig., 241 F.R.D.
397, 406 (D. Mass. 2007).  In this district, the court has held
that class representatives need not have expert knowledge of the
subject matter of the suit, may rely on class counsel for
guidance, and need not be subjectively interested in the case, as
long as the representatives have not virtually abdicated control
of the case to counsel.  In re Tyco Int'l, Ltd., 2006 WL 2349338
at *2 (D.N.H. Aug. 15, 2006).  A class representative is expected
to maintain sufficient involvement in the case to protect the
class against counsel's possibly competing or conflicting
interests.  Id.

The declarations submitted by Carrier and Whitman do not
address their understanding of their role in protecting the class
from counsel's possibly conflicting interests.  Carrier testified
in her deposition that she would represent the class by giving
her deposition, being prepared to go to court, and by "keeping
close track of what the attorneys are doing, as close as I can."
Mot. Ex. 28 at 94.  She explained that she would keep track of
the attorneys through email and would trust the attorney's
judgment when a course of action was recommended to her.  Id.
When asked what she would do if a conflict arose between the

24

interests of the class and counsel, Carrier answered, "I'm not technically sure how I would decide on that.  I might have to ask somebody else."  Id. at 96.  She listed her duties as being honest, telling the truth, "to be there if it's needed," and "to make sure that information submitted is as proper as I can tell."  Id. at 98.  In response to additional questioning, Carrier did not know what the time limits of the class claims would be or what states were included in the action.  She also indicated limited contact with her attorneys.

Whitman testified that her duties as class representative would be "to do things like a deposition and to really just be that representative if there is, you know, a trial or whatever it would involve to get to that end result for, again, what's fair and otherwise owed to the class."  Mot. Ex. 29 at 120.  She would fulfill her responsibilities "[w]ith help from counsel advising me what that, the best thing is to do for them, which to me would be representing them."  Id.  She further stated that if she disagreed with counsel, she would let him know.  At the time of the deposition, she had had one meeting with counsel, six telephone conversations, and email communications.

Based on Carrier's and Whitman's deposition testimony, they have little if any understanding of their role, independent of counsel, as class representatives.  Their limited contact with

counsel, other than by email, may be evidence of insufficient communication to support their role because of their dependence on guidance from counsel.  They emphasize their enthusiasm for serving as class representatives, but neither Carrier nor Whitman has demonstrated she understands how to fulfill her duty to protect the interests of the class.  Therefore, the requirements of Rule 23(a)(4) also appear to be insufficiently addressed to support a finding of adequacy.

V.   Rule 23(b)(3)

Carrier and Whitman propose a class that would proceed under Rule 23(b)(3).  Rule 23(b)(3) is satisfied "if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  In making that determination, the court is to consider, among other things, the interest of members in controlling separate actions, whether other litigation of the same claim is pending, the desirability of the forum, and the difficulties of proceeding as a class action.  Id.

A.   Predominance

    Carrier and Whitman assert that because the class members'
breach of contract claims are based on a form contract issued by
American Bankers, which promised refunds for unearned premiums,
their shared question of liability predominates over any
individual issues.[4]  Specifically, Carrier and Whitman contend
that the class shares the following legal issue:  "Did American
Bankers breach its contracts with the Plaintiffs and class
members by failing to refund their unearned premiums to them when
coverage stopped because of early loan payoffs?"  Mot. at 26.
American Bankers argues that the question of liability is not
shared because different laws govern the claims, which arose in
different states.  It also argues that individual determinations
about whether a class member is entitled to a refund and the
amount would make class treatment inappropriate.

    1.  Governing Law

    Carrier and Whitman contend that the law of New Hampshire,
the forum state, applies because New Hampshire law governing
insurance contracts is not materially different from the law in

_____

    [4]Carrier and Whitman do not address their separately alleged
claims of breach of the implied covenant of good faith and fair
dealing and for a declaratory judgment.  Therefore, those claims
are not considered in the class certification analysis.

the other states implicated in the proposed class members'
claims.  American Bankers argues that the court must engage in a
complex choice of law analysis for the states of residence of the
potential class members, which, it argues, would require many
individualized determinations.  Alternatively, American Bankers
contends that the laws of the states named in the class
definition conflict with New Hampshire law and require a choice
of law analysis as to each state.

In a diversity jurisdiction case, the forum state's choice
of law rules apply.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313
U.S. 487, 496 (1941); Reicher v. Berkshire Life Ins. Co. of Am.,
360 F.3d 1, 5 (1st Cir. 2004).  When the outcome would be the
same under the substantive law of any of the interested states,
however, no choice of law analysis is necessary.  Lambert v.
Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993); Patrick v. Mass. Port
Auth., 141 F. Supp. 2d 180, 187 n.6 (D.N.H. 2001).  Instead, the
forum state's law governs.  Lambert, 983 F.2d at 1114; Patrick,
141 F. Supp. 2d at 187 n.6.

None of the pertinent policies or certificates of insurance
has a choice of law clause.  The first issue in dispute is
whether the states of residence of potential class members or the
states where the insurance certificates were issued provide the
applicable law.  American Bankers assumes, without analysis, that

28

the states of the individual class members' residence provide the
applicable law.[5]  Carrier and Whitman, however, contend that
because the insurance issued to the potential class members was
through a group policy, the states where the insurance was issued
provide the governing law.

It appears to be undisputed that American Bankers provided
credit insurance through dealerships that issued American
Bankers's insurance certificates to customers who paid for
coverage.  As such, the insurance in question was issued through
group plans not through individual insurance policies.
In general, the law that governs the group plan holder or the
master policy also governs the individual certificates issued
under the plan.  See Hamilton v. Standard Ins. Co., 507 F.3d
1120, 1123 (8th Cir.  2007); Restatement (Second) of Conflicts of
Law § 192 cmt. h (group life insurance).  Because American
Bankers has made no developed argument that the states of
residence of the potential class members, rather than states
where the policies were issued, should provide the governing law,
the court will assume that the states listed in the proposed

_____

[5]Despite that assumption, American Bankers refers to the
thirteen states listed in the plaintiffs' proposed class
definition, which are the states where the insurance was issued.

class definition are those having an interest in the matters raised in this case.

Carrier and Whitman have provided charts of the law governing a breach of contract claim for New Hampshire and the other twelve states listed in the proposed class definition to show that no material differences exist.  They contend no material differences exist between the laws of New Hampshire and the other states.  As a result, they assert, the court may apply the law of New Hampshire, the forum state.

American Bankers argues that the states have different rules for considering ambiguous provisions in insurance contracts.  The differences cited, however, appear to be minor.  In addition, neither side has identified an ambiguous provision at issue in this case.  Because of the nature of the insurance contracts, which are form contracts that were not subject to bargaining, issues of extrinsic evidence and other means for interpreting ambiguities or intent are not likely to arise here.

American Bankers also argues that Carrier and Whitman have overlooked conflicts in the states' statutes pertaining to refunding unearned premiums.  It contends that the different statutory requirements are material to the legal standard because each state has a rule that relevant statutes are to be read into insurance contracts.  Specifically, American Bankers points to

statutes in Idaho that they represent require the creditor, not
the insurer, to make refunds of unearned premiums.  American
Bankers admits, however, that its insurance certificates used in
Idaho do not specify the creditor as the party required to make
the refund.

Carrier and Whitman agree that statutorily mandated
provisions are deemed to be part of an insurance contract but
argue that contract provisions which are more favorable to the
insured than the statutory requirements are enforced.  See Couch
on Insurance 3d ed. § 19:2 (2007).  The Idaho statute requiring a
creditor to repay unearned premiums would not conflict with a
provision in American Bankers's policy in which American Bankers
promised to refund the unearned portion of the premium.  Even if
a conflict were found, however, American Bankers's promise would
add a source for repayment which is more favorable to the
insureds.  Carrier and Whitman have demonstrated that the laws of
the affected states are similar to New Hampshire law, in all
material respects.  American Bankers has not undermined Carrier's
and Whitman's showing.  Therefore, common legal issues
predominate.

### 2. Uniform Contracts

In addition, American Bankers contends that contrary to the

31

plaintiffs' argument, the refund provisions in the form contracts
used in the listed states are different and would require
separate analyses for purposes of deciding the breach of contract
claims.  Specifically, American Bankers notes that some refund
provisions state affirmatively that "we" will refund the unearned
part of the premium while others promise a refund in the passive
voice, stating that a refund will be paid, without identifying
the party responsible for making the refund.  The contracts also
include different means for providing the refund and only some
promise a prompt refund.

Because American Bankers is the insurer that made the
promise of a refund, it is the responsible party (vis a vis the
insured) regardless of whether the policy language uses the
active or passive voice.  Therefore, the differences in the
various policies in wording the promise to refund are not
material.  Because the plaintiffs in this case claim that
American Bankers failed to refund the unearned part of premiums
but make no claim about whether the refunds were properly
credited or the timeliness of refunds, differences in those
provisions are immaterial.

3.  Individual Proof Issues

American Bankers asserts that individualized issues will
arise as to whether it was notified of each prepayment as

32

required under a constructive notice requirement it argues should be interpreted to be part of its insurance policies.  No such constructive notice requirement, however, has been interpreted to exist in the policies in question.[6]

American Bankers also raises a concern about individual issues for calculating damages and refunds.  Although individual refunds will have to be calculated, that would be necessary whether the claims were brought individually or as a class.  The calculation of damages in this case appears to be relatively simple, involving a percentage of the premium paid.  The damages calculations are not likely to be sufficiently problematic to preclude class certification.

Carrier and Whitman have shown that at present common issues of both fact and law predominate over individual issues among the class for purposes of this suit.  In the event the actual class, once identified, presents unexpected individual issues, the question of class certification can be reconsidered.  See Tardiff, 365 F.3d at 6.

B.  Superiority

To satisfy the superiority requirement, Carrier and Whitman must show that proceeding as a class action is a superior means

---

[6]The cases cited by American Bankers to support its constructive notice theory are inapposite to the circumstances at issue in this case.

of adjudicating the issues raised over other available methods.
Fed. R. Civ. P. 23(b)(3).  Class actions are particularly
appropriate to address small claims when individual recoveries
would not support separate litigation.  <u>Amchem Prods.</u>, 521 U.S.
at 617; <u>Tardiff</u>, 365 F.3d at 7.

Carrier and Whitman contend that the minimal recoveries
sought by each individual insured in this case are insufficient
to support separate actions.  They also argue that consumer class
actions are favored.  In response, American Bankers cites the
individual issues it asserts will arise in litigating the claims
as a class action.  As is discussed above, however, the
individual issues are not so serious as to preclude
certification.

C.  <u>Manageability</u>

The manageability aspect of class certification "encompasses
the whole range of practical problems that may render the class
action format inappropriate for a particular suit." <u>Eisen v.
Carlisle & Jacquelin</u>, 417 U.S. 156, 164 (1974).  Carrier and
Whitman contend that the case is manageable as a class action
even if the court had to apply the laws of thirteen different
states to the issues raised.  American Bankers argues that the
differences in the contracts and the applicable law will make the
case unmanageable.

At present, it appears that in the absence of a true conflict among the laws of the interested states, the court will apply the law of the forum, New Hampshire.  A consistent body of law will greatly simplify adjudication of the issues in this case.  No other issues have been presented that would suggest the class would present insurmountable management problems.

<u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion for class certification (document no. 39) is denied without prejudice to refile with additional support to address the factors that were not sufficiently demonstrated in the present motion.  The plaintiffs' motion for oral argument (document no. 62) is also denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

February 1, 2008

cc:  Dustin T. Brown, Esquire
     Frank Burt, Esquire
     James E. Butler, Jr., Esquire
     Kate S. Cook, Esquire
     Jason Lance Crawford, Esquire
     J. Clay Fuller, Esquire
     Wilbur A. Glahn, III, Esquire
     Farrokh Jhabvala, Esquire
     Edward K. O'Brien, Esquire
     Joel O. Wooten, Jr., Esquire